TRACY L. WILKISON
Acting United States Attorney
BRANDON D. FOX
Assistant United States Attorney
Chief, Criminal Division
STEVEN R. WELK
Assistant United States Attorney
Chief, Asset Forfeiture Section
JONATHAN GALATZAN
Assistant United States Attorney
California Bar Number 190414
    1400 United States Courthouse
    312 North Spring Street
    Los Angeles, California 90012
    Telephone: (213) 894-2727
    Facsimile: (213) 894-0142
    E-mail: Jonathan.Galatzan@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>        v.<br><br>$33,813.11 SEIZED FROM US BANK ACCOUNT #XXXXXXXXX1782 AND $250,000.00 SEIZED FROM BAIL USA,<br><br>    Defendants. | No. 2:21-cv-2742<br><br>**VERIFIED COMPLAINT FOR FORFEITURE**<br><br>18 U.S.C. § 1594(e)(1)(A)<br><br>[FBI] |

Plaintiff United States of America ("the government") brings this claim against the defendants $33,813.11 seized from US Bank Account #XXXXXXXXX1782 and $250,000.00 seized from Bail USA (collectively, the "defendants"), and alleges as follows:

1

JURISDICTION AND VENUE

1. The government brings this *in rem* civil forfeiture action pursuant to 18 U.S.C. § 1594(e)(1)(A).

2. This Court has jurisdiction over the matter under 28 U.S.C. §§ 1345 and 1355.

3. Venue lies in this district pursuant to 28 U.S.C. § 1395.

PERSONS AND ENTITIES

4. The plaintiff is the United States of America.

5. The defendants are (1) $33,813.11 seized from US Bank Account #XXXXXXXX1782 ("US Bank 1782"), which account is held in the name of Mei Xing ("Xing") and was seized at U.S. Bank, 800 Nicollett Mall, Minneapolis, Minnesota 55402 on April 22, 2020 pursuant to a federal seizure warrant; and (2) $250,000.00 seized from Bail USA representing a portion of the proceeds of the sale of real property titled in the name of Xing located in San Gabriel, California[1] on April 21, 2020 pursuant to a federal seizure warrant and seized at Bail USA, 157 Main Street, Greenville, Pennsylvania 16125.

6. The defendants are currently in the custody of the United States Marshals Service in this District, where they shall remain subject to this Court's jurisdiction during the pendency of this action.

7. The interests of Xing, Sean Hooley[2] and Bail USA may be adversely affected by these proceedings.

---

[1] Pursuant to Local Rule 5.2-1 only the city and state of residences are set forth in this Complaint.

[2] On December 31, 2020, Sean Hooley filed a claim in the administrative forfeiture proceedings to the defendants, purportedly on his behalf and that of his mother, Xing.

## FACTS SUPPORTING FORFEITURE

8. From at least July 2016 to October 23, 2018, Xing engaged in sex trafficking by force, fraud, and coercion, in violation of 18 U.S.C. §§ 1591 and 1594, involving at least six victims, including victim Q.D. In many respects, Xing's pattern method of trafficking was similar for each of her victims.

9. On or about January 2017, Xing recruited Q.D. to be a massage therapist at Xing's massage parlor located at 9622 Garvey Avenue, South El Monte, CA ("Sunshine Massage"). Shortly after Q.D. was hired, Xing induced and coerced Q.D. to engage in commercial sex against her will. On or about May 30, 2017, Sunshine Massage closed. From on or about June 1, 2017 to October 2018, pursuant to a written partnership agreement, Xing co-owned and managed a different massage parlor location: 2821 Peck Road, Unit E, El Monte, CA; and on or about June 22, 2017, Xing entered a written partnership agreement to co-own and manage a second massage parlor location: 9611 Garvey Avenue Unit 201A, South El Monte (collectively, the "Co-Owned Massage Parlors"). Xing brought some of her prior victims, including Q.D., to the Co-Owned Massage Parlors to continue providing massages and commercial sex.

10. Xing told Q.D. and other victims at the massage parlor that if they left, XING would report Q.D. (and other sex trafficking victims who wanted to leave Xing's employment) that Xing would turn them into the police.

11. Xing coerced other victims into performing commercial

3

sex by all manner of threats, including threats to report their prostitution to police, expose their immigration status, and implicit threats to have them murdered.

12. Xing's threats to Q.D. and other victims induced them to continue engaging in commercial sex acts for the benefit of Xing against their will.

13. Xing benefited financially from the victims, including Q.D., when they engaged in coerced commercial sex at the Co-Owned Massage Parlors.

14. Xing's sex trafficking conduct affected interstate and foreign commerce because commercial sex inherently affects interstate commerce, the commercial sex was offered in part at businesses open to interstate commerce, items that moved in interstate commerce were used to facilitate the commercial sex, and instrumentalities of interstate commerce were used to recruit, maintain, and obtain the victims, including Q.D., for commercial sex with patrons.

**Xing Trafficked Q.D. and Hired Q.D. to be a Massage Therapist**

15. In or about January 2017, Xing recruited Q.D. to be a massage therapist at Sunshine Massage. A friend introduced Q.D. to Xing via the WeChat communication app. At the time, Q.D. believed she was applying for a position as a massage therapist with Xing, and was told to go to Sunshine Massage. A short while later, Q.D. arrived at Sunshine Massage and met Xing.

16. At their initial meeting, Xing did not ask Q.D. whether she was licensed to perform massages or to fill out any

employment forms. Xing told Q.D. that she would be paid $10 per hour-long massage performed, and nothing for half-hour long massages. Xing told Q.D. that she would get to keep her tips, but had to pay Xing $15 per week. Q.D. did not receive an hourly wage.

17. Q.D. knew she was working illegally because she did not have a massage license, but accepted the position anyway. For the first day or two, Q.D. performed massages as expected.

**Xing Induced Q.D. to Engage in Unwanted Commercial Sex Acts**

18. After hiring Q.D. to perform massages, Xing induced and coerced Q.D. into engaging in commercial sex acts against her will. Before this, Q.D. still believed that her job was to perform non-sexual massages.

19. On the second or third day after hiring Q.D., Xing told Q.D. that her next customer would be a "cop" and "whatever the customer tells you to do, do it." After Q.D. entered the massage room, the "cop" directed Q.D. to give him manual and oral stimulation to his genitals. Q.D. felt as though she had no choice but to comply because she was illegally working at the massage parlor without a license and did not want to get arrested. Q.D. said the "cop" did not physically harm her, but he did forcibly hold her down, and she felt like she could not refuse or leave.

20. Q.D. later discovered that the sex acts were commercial sex acts pre-arranged by Xing and the "cop" without

5

Q.D.'s knowledge or consent.

21. Q.D. also heard from other victims that nobody was allowed to take money or tips from the "cop" and that the "cop" told Xing about upcoming law enforcement raids of her massage parlor.

22. Q.D.'s experience was similar to multiple other victims, who stated that their first commercial sex acts were sexual assaults by customers expecting commercial sex acts that Xing had pre-arranged without the victims' knowledge or consent.

23. After Q.D.'s first commercial sex act, Xing arranged for Q.D. to perform commercial sex acts with two to three customers per day.

**Xing Coerced Victims, including Q.D., into Performing Commercial Sex at Xing's Townhouse**

24. Q.D. and other victims also engaged in commercial sex at Xing's Townhouse located in San Gabriel, California ("Xing's Townhouse"). Xing would typically arrange the commercial sex acts at Xing's Townhouse directly with the customers via telephone and coordinate with Q.D. via telephone or in person.

25. The commercial sex at Xing's Townhouse was part of Xing's sex trafficking by force, fraud and coercive conduct against multiple victims, including Q.D.

26. On one occasion, Xing arranged for a victim (other than Q.D.) to perform commercial sex at Xing's Townhouse. At that time, Xing brought the victim to the third floor of Xing's Townhouse and told the victim she had a regular customer, and to

6

wait. Then a man entered the room. The victim looked for a way to escape, but since she was on the third floor she felt there was nowhere for her to go. The victim was overpowered by the man, and felt that he forced her to have intercourse with him. Afterwards, the victim had bruises on her upper arms and pain in her vagina.

### Xing's State Arrest

27. On October 23, 2018, law enforcement executed a search warrant for Xing's Townhouse and the Co-Owned Massage Parlors. Law enforcement also executed a state arrest warrant for Xing.

### Xing's Townhouse

28. During the execution of the warrant at Xing's Townhouse, a witness who lived there told law enforcement that Xing's employees would come to the townhouse to conduct what the witness believed to be massage business in the third story bedroom. This witness suspected that the employees were also engaging in commercial sex acts, but that was just the witness's speculation. The witness described the women as dressed "scantily."

29. During the execution of the warrant at Xing's Townhouse, law enforcement saw, in the third-floor bedroom, two night stands next to a bed. In one night stand, law enforcement found condoms and a bottle of lotion. In the other night stand, law enforcement found a pair of high heeled shoes. In the

7

bathroom connected to the bedroom, law enforcement found additional condoms, cleaning supplies, oils, and toilet paper. The bedroom and adjoining bathroom were generally devoid of personal items.

**Proceeds from the Sale of Xing's Townhouse**

*Xing's Townhouse was security for her $250,000 bail in her state case*

30. On or about November 16, 2018, Xing was charged with Human Trafficking by the Los Angeles County District Attorney's Office. Xing was ultimately allowed to remain free on $250,000 bond. Xing secured her $250,000 bond with a deed of trust in favor of Pacific Bail Bonds[3] recorded against Xing's Townhouse.

**The sale of Xing's Townhouse**

31. On or about March 27, 2020, Xing sold Xing's Townhouse for $630,000. Prior to the sale, Xing's Townhouse was titled in Xing's name.

32. First American Title Company acted as the title insurance company and Jade Escrow, Inc. acted as the escrow company for the sale of Xing's Townhouse.

33. On February 19, 2020, Jade Escrow, Inc. informed Bail USA that Xing had listed Bail USA as a holder of a Note and Deed of Trust for Xing's Townhouse, and that the amount owed to Bail USA was to be paid in full through escrow with Jade Escrow, Inc.

---

[3] Bail USA acts as a surety for other bail bond companies, including Pacific Bail Bonds.

34. On February 20, 2020, Bail USA agreed to send a full re-conveyance of the title to Xing's Townhouse to Jade Escrow, Inc. upon receipt of $250,000.00 which was to be held by Bail USA as cash collateral for Xing's bail bond.

**Jade Escrow and First American Inc. sent $250,000 of the Xing Townhouse Proceeds to Bail USA**

35. On or about March 27, 2020, First American Title Company received $254,000 from Jade Escrow, Inc. On or about March 30, 2020 First American Title Company sent a $250,000 check to Bail USA. The document included with the check listed Xing as the seller of Xing's Townhouse.

36. Xing's Townhouse was re-conveyed free of any warrantee on March 31, 2020.

37. On or about April 20, 2020, the Los Angeles District Attorney's Office dismissed their case against Xing, thus exonerating Xing's bond and triggering Bail USA's obligation to return to Xing the $250,000.00 that Bail USA had received from First American Title Company. On April 21, 2020, the government seized the defendant $250,000.00 from Bail USA pursuant to a federal seizure warrant, before Bail USA returned those funds to Xing.

**The remaining proceeds from the sale of Xing's Townhouse**

38. On March 27, 2020, Jade Escrow, Inc. caused the $341,402.87 in remaining proceeds from the sale of Xing's Townhouse to be wired from their East West Bank trust account to US Bank 1782, with the funds being designated as "seller

proceeds" from the sale of Xing's Townhouse. On or about April 22, 2020, the government seized $33,813.11 from US Bank 1782, which was the amount remaining in the account.

### Indictment of Xing

39. On September 29, 2020, a Grand Jury in this District returned a First Superseding Indictment against Xing alleging violations of 18 U.S.C. § 1591(a)(1), (a)(2), and (b)(1)(Sex Trafficking), *United States of America v. Mei Xing*, CR 20-228(A)-ODW.

40. Based on the above, the government alleges that the defendants represent property traceable to real property involved in, used, or intended to be used to commit or to facilitate the commission of one or more acts in violation of 18 U.S.C. §§ 1591 and/or 1594 (sex trafficking). The defendants are therefore subject to forfeiture pursuant to 18 U.S.C. § 1594(e)(1)(A).

WHEREFORE, plaintiff United States of America prays:

(a) that due process issue to enforce the forfeiture of the defendants;

(b) that due notice be given to all interested parties to appear and show cause why forfeiture should not be decreed;

(c) that this Court decree forfeiture of the defendants to the United States of America for disposition according to law; and

//

(d)   for such other and further relief as this Court may deem just and proper, together with the costs and disbursements of this action.

Dated: March 30, 2021

TRACY L. WILKISON
Acting United States Attorney
BRANDON D. FOX
Assistant United States Attorney
Chief, Criminal Division
STEVEN R. WELK
Assistant United States Attorney
Chief, Asset Forfeiture Section


/s/Jonathan Galatzan
JONATHAN GALATZAN
Assistant United States Attorney

Attorneys for Plaintiff
UNITED STATES OF AMERICA

**VERIFICATION**

I, Corrie Lyle, hereby declare that:

1. I am a Special Agent with the Federal Bureau of Investigation and am the case agent for the forfeiture matter entitled United States v. $33,813.11 seized from US Bank Account #XXXXXXXXX1782, et al.

2. I have read the above Verified Complaint for Forfeiture and know its contents. It is based upon my own personal knowledge and reports provided to me by other law enforcement agents.

3. Everything contained in the Complaint is true and correct, to the best of my knowledge and belief.

I declare under penalty of perjury that the foregoing is true and correct.

Executed March 30th, 2021 in Los Angeles, California.

_____
Corrie L. Lyle
Special Agent-FBI